Matter of Klosterman v New York State Dept. of Corr. & Community Supervision (2025 NY Slip Op 06960)

Matter of Klosterman v New York State Dept. of Corr. & Community Supervision

2025 NY Slip Op 06960

Decided on December 16, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 16, 2025

No. 16-20
 

[*1]In the Matter of the Claim of 
Victor Klosterman,
Appellant.
New York State Department of
Corrections and Community
Supervision,
 Respondent.
Commissioner of Labor,
 Respondent.
(And Another Related Claim.)
(And Five Other Appeals.)

Michael J. Hutter, for appellants.
Brian Lusignan, for respondent Commissioner of Labor.

SINGAS, J.

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub L 116-136, 134 US Stat 281), providing additional federally funded unemployment compensation during the COVID-19 pandemic. Only individuals who were "unemployed, partially unemployed, or unable or unavailable to work" qualified to receive these benefits (15 USC § 9021 [a] [3] [A] [ii] [I]). We hold that the New York State Department of Labor (NYSDOL) properly applied former Labor Law §§ 522 and 591 (1)'s total unemployment requirement to determine claimants' eligibility for CARES Act and related benefits. We thus affirm the Appellate Division orders.
I.
A.
Under the federal-state unemployment compensation scheme, States that have created a system to administer unemployment benefits that complies with federal law receive financial assistance from the federal government to administer these benefits (see 42 USC § 501 et seq.; 26 USC § 3301 et seq.; 20 CFR 601.01 et seq.). Eligibility for benefits, benefit amounts, and the duration of benefits are generally determined by state law (see Ohio Bureau of Employment Servs. v Hodory, 431 US 471, 483 [1977]).
To be eligible for benefits under New York's unemployment compensation program, governed by the Unemployment Insurance Law, an individual must have lost their job through no fault of their own (see Labor Law § 593), have earned enough qualifying wages in the past 18 months (see id. § 590 [5]), and be ready, willing, and able to work and actively seeking a new job (see id. § 591 [2]). During the relevant period, New York law allowed qualifying individuals to receive regular unemployment compensation only if they were "totally unemployed" for more than three days in a given week (former Labor Law § 591 [1]; see former § 523).[FN1] Total unemployment was defined as "the lack of any employment on any day" (id. former § 522). After three full days of total unemployment in a week, an individual started to accumulate "effective days" through each subsequent day of total unemployment in a week where they did not earn over a certain threshold (id. former § 523). Each effective day entitled a claimant to 25% of their weekly benefit amount. For example, a claimant who worked two days and was totally unemployed for five days, and therefore had two effective days, could receive 50% of their weekly benefit amount. If a claimant had four effective days—i.e., if they had not worked any day of the week—they could receive their full weekly benefit. Benefits could not be paid for more than 104 effective days per year (see id. former § 590 [4]).
B.
The CARES Act created "pandemic unemployment assistance" (PUA), available to "covered individuals" for "weeks of unemployment, partial unemployment, or inability to work caused by COVID-19" (15 USC § 9021 [c] [1] [A]). The Act defined a "covered individual" as one who is "not eligible for regular compensation or extended benefits under [s]tate or [f]ederal law" (id. § 9021 [a] [3] [A] [i]; see also 26 USC § 3304 [a] [11]). Unlike traditional unemployment compensation, PUA was available to individuals ineligible for other unemployment benefits who were "self-employed," "seeking part-time employment," or lacked "sufficient work history" (id. § 9021 [a] [3] [A] [ii] [II]). Additionally, to be eligible, an individual was required to certify that they were "otherwise able to work and available for work within the meaning of applicable [s]tate law" but were "unemployed, partially unemployed, or unable or unavailable to work" due to an enumerated reason related to COVID-19 (id. § 9021 [a] [3] [A] [ii] [I]). The Act did not, however, define the terms "unemployed, partially unemployed, or unable or unavailable to work." The United States Department of Labor's (USDOL) disaster unemployment assistance regulations (see 20 CFR part 625), which Congress directed would apply to the Act unless inconsistent with it (see 15 USC § 9021 [h]), likewise do not define these terms (see 20 CFR 625.2).
Congress authorized USDOL to "issue . . . operating instructions or other guidance necessary to carry out the" CARES Act's unemployment compensation programs (see 15 USC § 9032 [b]). In doing so, USDOL explained that "the terms and conditions of the state law of the applicable state for an individual which apply to claims for, and the payment of, regular compensation apply to the payment of PUA to individuals" (U.S. Department of Labor, Employment and Training Administration, Unemployment https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20_Attachment_1.pdf). This included, "but [was] not limited to," claim filing rules, due process, notice, appeals, disqualification, ability to work and availability for work" (id.).[FN2] USDOL further explained that "the CARES Act operate[s] in tandem with the fundamental eligibility requirements of the [f]ederal-[s]tate . . . program which must be adhered to" (U.S. Department of Labor, Employment and Training Administration, Unemployment Insurance Program Letter No. 15-20 at 2, available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_15-20.pdf)—requirements that, as already explained, are generally governed by state law (see Hodory, 431 US at 483). Further reflecting this framework, USDOL has also explained that "States must ensure that individuals only receive benefits in accordance with federal [*2]and state law" (U.S. Department of Labor, Employment and Training Administration, Unemployment Insurance Program Letter No. 09-21 at 4, available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_9-21.pdf).[FN3]
II.
During the relevant period, claimants were full-time civil service employees who worked at various Department of Corrections and Community Supervision (DOCCS) facilities. Claimants worked as, or supervised, institutional instructors and teachers providing educational or vocational services for incarcerated individuals. Claimants performed services for DOCCS under a collective bargaining agreement between their labor union and the State. Claimants received an annual salary. As was their right under the collective bargaining agreement, some claimants chose to receive their annual salary over the 10-month academic year, while others chose to receive it over the 12-month calendar year. In addition, DOCCS made optional summer work available to instructors and teachers for additional hourly pay.

Claimants worked the entire 2019-2020 academic year. In June 2020, DOCCS informed claimants that it was suspending its academic and vocational programs for that summer due to the COVID-19 pandemic.[FN4] After learning that optional summer work would not be available that year, claimants applied for state unemployment benefits, PUA, FPUC, and LWA. After initially granting their applications and paying these benefits, NYSDOL issued revised determinations concluding that claimants did not qualify for these benefits because they were paid an annual salary and did not satisfy the Labor Law's "total unemployment" requirement during the summer. NYSDOL consequently charged claimants with overpayments of PUA, FPUC, and LWA.[FN5]
At their hearings, claimants testified that they were full-time civil service employees working for DOCCS as instructors, teachers, or supervisors of such work and were paid an annual salary that they could opt to receive over 10 months or 12 months.[FN6] In separate, substantively identical determinations, an Administrative Law Judge sustained NYSDOL's revised determinations denying claimants benefits, finding that claimants were not entitled to unemployment benefits under the "total unemployment" requirement. The Unemployment Insurance Appeal Board (Board) affirmed in separate decisions. Claimants appealed.
The Appellate Division affirmed the Board's decisions.[FN7] The Court held that substantial evidence supported the Board's findings that claimants were not "totally unemployed" during the summer of 2020 and were therefore ineligible for unemployment benefits for that period (Matter of Almindo, 223 AD3d at 9). The Court reasoned that "it was undisputed that claimants, although only required to work during the academic year, were paid their full annual salary," "which, by definition, compensates them for the entire 12-month year including the summer recess" (id.). Moreover, the Court determined that, in light of "the Board's finding that claimants were not totally unemployed and therefore ineligible for unemployment insurance benefits under state law, claimants were also not eligible to receive federal pandemic assistance under the CARES Act" (id. [internal quotation marks and brackets omitted]). Accordingly, the Court concluded that NYSDOL had properly charged claimants with overpayments of PUA, FPUC and LWA. We granted claimants leave to appeal.[FN8]
III.
Claimants contend that the Labor Law's former "total unemployment" requirement cannot govern eligibility for PUA (which in turn governs eligibility for FPUC and LWA) because the requirement conflicts with the plain language and purpose of the CARES Act. According to claimants, they should be eligible for these benefits because they were "unable to work" because their "place of employment" was "closed as a direct result of the COVID-19 public health emergency" (15 USC § 9021 [a] [3] [A] [ii] [I] [jj]). Claimants argue that the total unemployment requirement conflicts with the Act because the latter provides for benefits not just when an individual is "unemployed," but also when they are "partially unemployed" or "unable or unavailable to work" (id. § 9021 [a] [3] [A] [ii] [I]). According to claimants, application of the total unemployment requirement presents a conflict because it would, in essence read the terms "partially unemployed" and "unable or unavailable to work" out of the statute.
Claimants' argument misapprehends the Unemployment Insurance Law's eligibility rubric. The phrase "totally unemployed" is a misleading statutory term of art. As explained above, under that rule, an individual was entitled to unemployment benefits where their employment was reduced to fewer than four days a week, i.e., where they were partially employed (see former Labor Law §§ 522, 591 [1]). Thus, the requirement does not conflict with the CARES Act's conferral of eligibility to "partially unemployed" claimants. Nor does the total unemployment requirement foreclose coverage for those who are "unavailable or unable to work" (15 USC § 9021 [a] [3] [A] [ii] [I]). Inclusion of that phrase is consistent with the expansion of benefits to various categories of individuals who [*3]would not traditionally be considered "unemployed" or "partially unemployed," but who are nonetheless eligible for CARES Act benefits, state law notwithstanding.[FN9]
The Act's lack of any definition, and claimants' inability to provide any workable alternative definition for these general terms, only underlines that Congress likely did not intend to displace state law and create a freestanding eligibility framework for determining work status (see United States v Paiva, 2023 WL 4614505, *3, 2023 US App LEXIS 18269, *8 [11th Cir 2023] [upholding guilty plea for benefits fraud—including collecting PUA, FPUC, and LWA—because the defendant who had a full-time job was not unemployed under state law]; Appeal of LaPadula, 2024 WL 5183712, *2, 2024 NH LEXIS 280, *4-6 [2024 nonprecedential] ["an individual can be ineligible for regular state (unemployment compensation) due to one of the disqualifications removed by the CARES Act and still be ineligible for PUA due to a state law disqualification provision not specifically removed by the Act"], cert denied 145 S Ct 2795 [2025]). Deferring to state unemployment law on questions of eligibility is also in keeping with the framework of the federal-state unemployment compensation scheme, under which states are left to structure and administer their own systems, so long as they comply with minimum federal standards and do not conflict with federal law (see Hodory, 431 US at 483 [states have "broad freedom" to set up unemployment compensation systems (internal quotation marks omitted)]).
Claimants further argue, in essence, that imposing state eligibility requirements for CARES Act benefits would be absurd because it would conflict with the basic premise of PUA, which is to support workers who are not eligible for state benefits (see 15 USC § 9021 [a] [3] [A] [i]). Claimants' argument is again based on an oversimplification of unemployment eligibility requirements. To be eligible for typical unemployment benefits in New York, an individual, in addition to being "totally unemployed," must have earned enough qualifying wages in the past 18 months (see Labor Law § 590 [5]) and be ready, willing, and able to work and actively seeking a new job (see id. § 591). During the relevant period, once an individual received 104 effective days' worth of benefits in a year, they were no longer eligible (see id. former § 590 [4]). Thus, even applying the total unemployment requirement, the Act expanded eligibility far beyond traditional unemployment compensation to the self-employed, those who had exhausted their state benefits, and those who had not earned sufficient qualifying wages in the past 18 months (see id. § 9021 [a] [3] [A] [ii] [II]; U.S. Department of Labor, Employment and Training Administration, Unemployment Insurance Program Letter No. 16-20 at 1-2, available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20.pdf).
Our interpretation is also consistent with the CARES Act's legislative history. In a floor speech urging its passage, Representative Pramila Jayapal explained that PUA would "provide relief to those who may be ineligible for regular unemployment benefits, like gig workers and people who are self-employed" (162 Cong Rec E339 [Mar. 30, 2020]; see also Congressional Research Service, Unemployment Insurance: Legislative Issues in the 116th Congress at 16 [2021], available at https://www.congress.gov/crs_external_products/R/PDF/R45478/R45478.21.pdf). Similarly, Senator Roy Blunt explained that the Act would "create a temporary pandemic unemployment assistance program to give assistance to workers who normally wouldn't be eligible for unemployment yet" (166 Cong Rec S1995 [Mar. 24, 2020] [emphasis added]). Nothing in the legislative history demonstrates an intent to set aside all state eligibility requirements in favor of a unified federal standard. Because the Act would greatly expand unemployment benefits in line with its legislative purpose even if New York's total unemployment requirement governs eligibility, applying New York law on this issue is not absurd as claimants suggest.
For all of these reasons, we hold that the total unemployment requirement does not conflict with the CARES Act. Thus, the Board did not err in applying this requirement to determine that claimants were not "covered individuals" under the Act and were therefore ineligible for PUA, FPUC, and LWA. Given the Appellate Division's holding that substantial evidence supported the Board's conclusion that claimants were not totally unemployed, which [*4]claimants do not challenge on appeal, NYSDOL properly charged claimants with overpayments for the disputed unemployment benefits (see 15 USC §§ 9021 [d] [4]; 9023 [f] [2]; 20 CFR 625.14; 44 CFR 206.120 [f] [5]).
Accordingly, in each matter, the order of the Appellate Division should be affirmed, with costs.
In each case:
Order affirmed, with costs. Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.
Decided December 16, 2025

Footnotes

Footnote 1: The legislature amended the Labor Law, effective August 15, 2021, to follow an hours-based—rather than day-based—eligibility formula (see L 2021, ch 277, §§ 1, 12-14).
Footnote 2: Claimants argue that this USDOL guidance only calls for applying state law to procedural issues concerning administrative claims processing. But the list's inclusion of "disqualification" and "ability to work and availability for work" refutes this argument.
Footnote 3: The CARES Act also created the "federal pandemic unemployment compensation" (FPUC) program, which provided $300 in weekly unemployment compensation benefits, augmenting any other unemployment benefits received (see 15 USC § 9023). Thus, if an individual was entitled to PUA benefits, they were also entitled to FPUC benefits (see id. § 9021 [d] [1] [A] [ii]; [2]). On August 8, 2020, the President further authorized the "lost wage assistance" (LWA) program, providing extended supplemental benefits to those receiving PUA benefits (see U.S. Department of Labor, Employment and Training Administration, Unemployment Insurance Program Letter No. 27-20, available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_27-20.pdf; 42 USC § 5174 [e] [2]).
Footnote 4: Claimants did not perform summer work during the summer of 2020, but remained on DOCCS's payroll throughout the summer and resumed their work duties for DOCCS at the beginning of the 2020-2021 academic year.
Footnote 5: NYSDOL ultimately did not seek to recover state unemployment benefits already paid to claimants.
Footnote 6: NYSDOL, DOCCS, and the labor union stipulated that NYSDOL's decision for the named claimants would bind more than 200 additional claimants listed in the stipulations, subject to the right to appeal, regarding the issues of whether those claimants were "totally unemployed," "eligible to receive [unemployment insurance benefits] or PUA," and entitled to LWA and FPUC for the relevant period.
Footnote 7: See Matter of Almindo (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 223 AD3d 5 (3d Dept 2023); Matter of Bruyere (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 224 AD3d 1032 (3d Dept 2024); Matter of Klosterman (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 225 AD3d 1068 (3d Dept 2024); Matter of Dunn (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 225 AD3d 1070 (3d Dept 2024); Matter of Lamphier (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 225 AD3d 1082 (3d Dept 2024); Matter of Dixon-Domines (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 225 AD3d 1085 (3d Dept 2024).
Footnote 8: See Matter of Dixon-Domines (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 910 (2025); Matter of Bruyere (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 910 (2025); Matter of Klosterman (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 911 (2025); Matter of Dunn (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 911 (2025); Matter of Lamphier (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 911 (2025); Matter of Almindo (New York State Dept. of Corr. & Community Supervision—Commissioner of Labor), 42 NY3d 1066 (2025).
Footnote 9: For example, the terms "unemployed or partially unemployed," alone, might not encompass individuals who lose contract work or self-employment (see id. § 9021 [a] [3] [A] [ii] [II]) or those who have jobs but lose income because they are not able to go to work due to their or a family member's COVID-19 diagnosis (see id. § 9021 [a] [3] [A] [ii] [I] [aa]-[gg]).